IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

UNITED STATES OF AMERICA

v.

(1) AGHORN OPERATING, INC., et al.

NO. 7:22-CR-00049-DC

**UNITED STATES' OPPOSITION TO DEFENDANTS' SUPPLEMENTAL AUTHORITY AFTER HEARING ON MOTION TO DISMISS COUNT TWO**

In their "supplemental authority" filed on February 7, 2023 (Doc. 46), the Defendants concede that the NAAQS regulatory definition, on its terms, does not apply here. That definition of ambient air is restricted by its terms to "this part," referring to "Part 50-National Primary and Secondary Ambient Air Quality Standards." 40 C.F.R. § 50.1 (emphasis added). The authority to issue the regulation was specifically tied back to the NAAQS standards. See Part 410—National Primary and Secondary Ambient Air Quality Standards. 36 Fed. Reg. 8186, 8187 (Apr. 30, 1971) (exclusively citing Sec. 4, Public Law 91-604, Stat. 1679 as the authority for the issuance of the regulations, including the definitions codified at 40 C.F.R. § 50.1).

The Defendants resort to generalized "presumptions" while ignoring the fact that the Supreme Court has weighed in on this statute and held that under the Clean Air Act (CAA) there is "no 'effectively irrebuttable' presumption that the same defined term in different provisions of the same statute must 'be interpreted identically' . . . [c]ontext counts." Env't Def. v. Duke Energy Corp., 549 U.S. 561, 574-76 (2007). The CAA established multiple distinct regulatory schemes for controlling air quality, which the Supreme Court recognized when it unanimously declined to interpret identically a term ("modification") that appears in two different portions of

the CAA, finding that a "given term in the same statute may take on distinct characters from

association with distinct statutory objects calling for different implementation strategies." Id.

In addition to being trumped by a controlling Supreme Court case, the general

presumption "of common or consistent meaning" is misplaced here. The Defendants refer to

terms "repeated in different parts of the same statute" and "appearing in several places in a

statutory text" (Doc. 46 at 2), though the NAAQS definition they cite is found in a regulation,

not a statute. They then compound the error by arguing that the definition (created by EPA and

explicitly confined to the NAAQS) should be treated as if it were the equivalent to a statutory

definition that automatically carries over to other distinct statutory provisions – like the

endangerment provision – which Congress enacted 20 years later on the understanding that there

was no general CAA definition for ambient air, but rather just one that the EPA had created via

regulation and confined to one particular program.

Du Pont is factually analogous and stands for the proposition that this "fence line"

contention is not appropriate for pre-trial resolution. 2022 WL 3566843 at *14. Just as in Du

Pont, the fatalities here occurred inside a building and the deadly gas migrated outside,

endangering first responders and firefighters.[1] The court held that factual issues related to the

migration of a release are not to be resolved pretrial. Id. ("DuPont is raising a factual dispute as

to where the gas went and whether those locations constitute 'ambient air.'"). This court should

follow the sound reasoning of Du Pont, which rejected a nearly identical argument to the one

made here.

---

[1] H2S readings by the Odessa Fire Department will show potentially lethal releases in the air outside the pump house on both the night of the fatalities, October 26, 2019, as well as the next day. The evidence will also show that on the night the poisonous gas killed the Deans, the hazardous plume traveled beyond the facility at levels sufficient to adversely impact public health. In addition, H2S releases at this site (and other Aghorn sites) prompted many complaints from neighbors and contractors, including those suffering health effects, as the company has been a longstanding nuisance to the community. See also, Notice of Intent to Offer Intrinsic Evidence and Evidence Pursuant to Federal Rule of Evidence 404(b), filed in this case at Doc. 33 (December 13, 2022).

In <u>Rimmasch</u>, the court squarely supports the position of the United States and is highly persuasive. <u>See</u> <u>United States v. Rimmasch</u>, No. 21-CR-138 at Doc. 141 at page 39 (D. Wyoming, April 13, 2022). The court there instructed the jury correctly on the meaning of ambient air by simply stating: "The term 'ambient air' means the air present all around us." <u>Id.</u> Regardless of a defendant's input on the jury instructions, the court is responsible for instructing the jury and did so here in accordance with the law.

Adopting this inapplicable definition of ambient air would absolve the Defendants from exposing employees and others at its facilities to hazardous pollutants. Contrary to their argument, the narrowly tailored OSH Act's willful misdemeanor penalties do not apply to the CAA endangerment prohibition for knowingly releasing hazardous substances into the air.[2] Therefore, granting their motion would be both legally erroneous and allow corporations to knowingly expose their workers to hazardous air pollutants with impunity.

---

[2] 29 U.S.C. § 666(e) provides a misdemeanor penalty when "any employer . . . willfully violates any [OSH Act] standard . . . and that violation caused death to any employee . . . ." The misdemeanor (not felony) applies only for violations of specific standards (not releases of hazardous air pollutants generally) and only when they cause the death (not endangerment) of an employee. The OSH Act also has a highly restrictive definition of "employer," and an employee who is not an officer or director can neither directly commit a 666(e) violation, nor aid and abet an employer in committing an offense.  <u>See</u> <u>United States v. Shear</u>, 962 F.2d 488, 490-95 (5th Cir. 1992); <u>United States v. Doig</u>, 950 F.2d 411, 412-16 (7th Cir. 1991).

Respectfully submitted,

TODD KIM
ASSISTANT ATTORNEY GENERAL
ENVIRONMENT and NATURAL
RESOURCES DIVISION

By: /s/ Christopher J. Costantini
CHRISTOPHER J. COSTANTINI
Senior Trial Attorney
Pennsylvania Bar No. 64146
Environmental Crimes Section
Environment & Natural Resources Division
4 Constitution Square
150 M Street, NE, Suite 4.212
Washington, DC 20044

By: /s/ Mark T. Romley
MARK T. ROMLEY
Trial Attorney
California Bar No. 240655
Environmental Crimes Section
Environment & Natural Resources Division
999 18th Street, Suite 370, South Terrace
Denver, CO 80202

**Certificate of Service**

I certify that on February 8, 2023, I filed this document with the Clerk using the CM/ECF

filing system, which will cause a copy of the document to be delivered to counsel of record.

By: /s/ Christopher J. Costantini
CHRISTOPHER J. COSTANTINI
Senior Trial Attorney