**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                                          **NO. 7:22-CR-00049-DC**

**AGHORN OPERATING, INC., et al.**

**DEFENDANTS' MOTION TO EXCLUDE EVIDENCE OF
VIOLATING CIVIL, REGULATORY, OR INDUSTRY STANDARDS
INCLUDING TESTIMONY FROM GOVERNMENT EXPERTS THAT
(1) DEFENDANTS VIOLATED CIVIL AND REGULATORY LAWS;
(2) DEFENDANTS VIOLATED INDUSTRY STANDARDS; and
(3) DEFENDANTS VIOLATED THE INDICTED STATUTES**

At trial, the government proposes to offer evidence that Aghorn violated civil and

regulatory laws and industry standards as proof of *criminal* liability.  For example, the

government proposes to call an "expert" from the EPA named Deyoe to testify that:

> Aghorn's numerous failures to comply with industry standards and practices,
> [Railroad Commission rules] and OSHA regulations and guidance clearly
> demonstrate that Aghorn failed to comply with the requirements of the Clean Air
> Act's general duty clause [that is charged in count one].

Deyoe p 27.

As set out below, evidence of civil and regulatory violations is foreclosed by Fifth

Circuit precedent dating back to *United States v. Christo*, 614 F.2d 486 (5th Cir. 1980).

Evidence of violating industry standards should be excluded by the same reasoning.  *E.g.,*

*United States v. Pacific Gas & Electric Co*., 2016 WL 1640462 (N.D. Cal. April 26, 2016).

And expert opinion on the law or the ultimate jury question is also improper.  Defendants

hereby move for a definitive ruling excluding such evidence, *see* Fed. R. Evid. 103(b).  In the alternative, defendants move for an *in limine* order requiring the government to approach the bench before attempting to introduce such evidence.  A resolution of this motion is important to allow defendants to plan what experts to try to offer in rebuttal.

      1.     **Civil and Regulatory Violations and *United States v. Christo***.  The Fifth Circuit has long recognized that, in a criminal case, evidence of civil and regulatory violations poses a grave risk that a defendant may be convicted for conduct that is not criminal.  The seminal decision is *United States v. Christo*, 614 F.2d 486 (5th Cir. 1980).  Christo was indicted for knowing "conversion" of bank funds under 18 U.S.C. § 656.  At trial, the district court allowed the government to show that Christo's conduct violated a civil statute (12 U.S.C. § 375a, which forbids a bank officer to take out large credits from the bank).  *See Christo*, 614 F.2d at 492.  The Fifth Circuit reversed: "it simply d[id] not matter that the same acts [constituting criminal misapplication under § 656] might [also] violate the regulatory provisions of § 375a," *id.*, and the evidence of § 375a violations was "legally irrelevant."  *Id.*  The court wrote:

> A conviction, resulting from the government's attempt to bootstrap a series of checking account overdrafts, a civil regulatory violation, into an equal amount of misapplication felonies, cannot be allowed to stand.  The government's evidence and argument concerning violations of § 375a impermissibly infected the very purpose for which the trial was being conducted to determine whether Christo willfully misapplied bank funds with an intent to injure and defraud the bank, not whether Christo violated a regulatory statute prohibiting the bank from extending him credit in excess of $5,000.

*Id.*

Since deciding *Christo*, the Fifth Circuit has reaffirmed that civil violations should not be admitted as proof of criminal liability.[1]   And, indeed, even in *civil* cases the Fifth Circuit has recognized the dangers of evidence of civil and regulatory violations, especially where those violations are memorialized in some sort of official government action.[2]

Here, the government intends to offer evidence of numerous civil and regulatory environmental and safety law violations.  For example, the government proposes to call witnesses to testify that:

---

[1] *See, e.g., United States v. Schnitzer*, 145 F.3d 721, 730-31 (5th Cir. 1998) (in trial of banking offenses, introduction of evidence of alleged violation of Financial Accounting Standards Board rule violated *Christo*); *United States v. Riddle*, 103 F.3d 423, 430-31 (5th Cir. 1997) (in trial of banking offenses, it violated *Christo* to allow into evidence reports prepared by the Office of the Comptroller of the Currency, where these reports detailed civil and regulatory violations at the bank in question); *cf. United States v. Cordell*, 912 F.2d 769, 778-80 (5th Cir. 1990) (Gee, J., dissenting) (would reverse defendant bank president's conviction for false entry in bank records because use of evidence that defendant violated a civil regulation ran afoul of *Christo*). *See also, United States v. White Eagle*, 721 F.3d 1108, 1114-15 (9th Cir. 2013) (reversing two convictions because "neither violation of an employer's instruction nor a civil rule by itself supports a conviction for conversion, theft, or misapplication of funds"); *United States v. Wolf*, 820 F.2d 1499, 1505-06 (9th Cir. 1987) (in trial for banking offenses, reference to violations of civil banking regulation required reversal for retrial).

[2] *See, e.g., Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 672-73 (5th Cir. 1999) (in civil suit based on workers' exposure to benzene, district court did not abuse its discretion in excluding evidence of Mississippi Department of Environmental Quality reports detailing violations of environmental regulations by defendants; not only was evidence cumulative, but also "the district court was entitled to conclude that the MDEQ evidence of likely violations would have been unduly prejudicial due to its apparent official nature") (citation omitted); *Sprankle v. Bower Ammonia & Chemical Co.*, 824 F.2d 409, 416-17 (5th Cir. 1987) (in civil suit based on workers' exposure to anhydrous ammonia, district court did not abuse its discretion in excluding evidence of OSHA regulations governing the storage and handling of anhydrous ammonia and sanctions imposed by OSHA on employer for violating those regulations "because of the danger of the jury placing undue emphasis on the OSHA regulations"); *cf. Fowler v. Firestone Tire & Rubber Co.*, 92 F.R.D. 1, 2 (N.D. Miss. 1980) (opining that, with respect to "documentary evidence [ ] in the form of reports promulgated by agencies of the United States government," "its apparent 'official' nature is likely to cause a jury to give the evidence inordinate weight").

- The defendants violated Texas state civil law requiring signs that warn of hazardous material (Deyoe p. 16);

- The defendants violated Texas state civil laws on safety training for employees (Deyoe p. 19);

- The defendants violated an OSHA regulation against respirators for employees with beards (Deyoe p. 21, Keteles p. 22);

- The defendants violated OSHA standards for medical exams (McElvaney p. 20);

- The U.S. Chemical Safety Board determined that Aghorn had poor site security (Kirksey p. 7);

- OSHA found that Aghorn violated OSHA respiratory safety requirements (Keteles p. 8);

- The defendants violated Texas Railroad Commission civil rules governing handling and monitoring of H2S;

- "Aghorn … did not adhere to … government regulations."  (Deyoe p 14).

The potential for jury confusion and "bootstrapping" here is even greater than in *Christo*:   the defendants violated so many civil standards … they must be guilty of violating criminal standards as well.

   a.   Based upon *Christo* and its progeny, defendants hereby move for a definitive order excluding the following categories of evidence (both documentary and testimonial):

- Civil/regulatory violations of environmental standards and worker/workplace safety standards, whether federal, state, or local;[3] and

---

[3] We recognize that Counts Three, Four, and Five of the indictment charge willful violation of regulations causing death to Jacob Dean.  Obviously, the government will have to adduce evidence of the violation of these regulations as part of the *actus reus* of the charged crimes.

- Any evidence that defendants have been cited for violations of, or found to be in violation of, any of the aforementioned standards, by any government agency, whether federal, state, or local – including, but not limited to, government reports, oral and written communications, and cease-and-desist orders.

We seek a definitive order because it will help inform the defense what experts if any it should seek to present.  If the Court is not prepared at this time to enter a definitive order excluding this evidence, then defendants ask in the alternative that the Court enter an *in limine* order requiring the government to approach the bench for a ruling on admissibility prior to any attempt to introduce such evidence.

      b.     To be sure, courts have recognized exceptions to *Christo*, but these are not applicable here.  For example, evidence of a civil law may be admissible to explain a defendant's motivation or intent to commit a crime, as in *United States v. Cordell*, 912 F.2d 769, 775 (5th Cir. 1990).  In *Cordell,* a bank officer was charged criminally with false entries in the books of the bank, and his actions were explained because his false entries were meant to avoid a civil law that limited how much money could be lent to a single borrower. Thus, admission of the civil law did not violate *Christo*, because it was offered to show why the defendant committed the criminal conduct and not to bootstrap a civil violation into a criminal conviction.  *Id.* at 777.   Similarly, "[w]ith appropriate limiting instructions, civil regulations and standards can sometimes be relevant to the question of intent" or absence of mistake.  *United States v. Rothenburg*, 328 Fed. Appx. 897, 902 (5th Cir. 2009) (unpublished) (citation omitted).  "The question then becomes whether the

actual evidence [proposed to be] admitted [is] appropriate or stray[s] too far from that which is admissible." *Id.* Care must be taken to ensure that such evidence does not become the tail wagging the dog of the charged offenses: "if the regulations are given too much emphasis, the trial may be impermissibly infected." *United States v. Giraldi*, 86 F.3d 1368, 1377 (5th Cir. 1996) (citation omitted).

Here, we do not perceive how evidence (from an expert or otherwise) that defendants violated civil and regulatory laws serves any relevant purpose. For example, there is no claim that the defendants committed the charged crimes in order to avoid a civil law of which they had notice. Rather, in a case charging environmental and worker safety crimes, evidence that defendants violated civil environmental and worker safety standards has a tendency to become the type of propensity evidence specifically forbidden by Rule 404(b); or, even if admissible, is unduly and unfairly prejudicial, thus justifying exclusion under Fed. R. Evid. 403. *See, e.g., Sprankle*, 824 F.2d at 416 (noting that, in worker injury suit, district court excluded OSHA regulations from evidence "because the danger of the jury placing undue emphasis substantially outweighed their probative value"). And evidence that a government agency has found a defendant in noncompliance is even more prejudicial: "its apparent 'official' nature is likely to cause the evidence inordinate weight and for this reason, any probative value the evidence might have would be far outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Fowler*, 92 F.R.D. at 2.

c.      For these reasons, this Court should enter a definitive order excluding

- Civil/regulatory violations of environmental standards and worker/workplace safety standards, whether federal, state, or local;[4] and

- Any evidence that defendants have been cited for violations of, or found to be in violation of, any of the aforementioned standards, by any government agency, whether federal, state, or local – including, but not limited to, government reports, oral and written communications, and cease-and-desist orders.

In the alternative, the Court should enter an *in limine* order requiring the government to approach the bench for a ruling before offering any evidence within either of the two categories set out above.

2.  **Violation of Industry (American Petroleum Institute) Standards**: Although *Christo* addressed the danger of bootstrapping civil law violations into a criminal conviction, admitting violations of industry standards in a criminal case poses the same risk.  Here, the government is proposing to present just such evidence at trial.  For example, government experts propose to testify that the defendants violated "Recommended Practices" published by the American Petroleum Institute, or "API RPs."  One expert alone (Deyoe of EPA) proposes to testify:

---

[4] See note 3.

- The defendants violated API Recommended Practice (RP) 55 §§ 3.10 and 9.18 for ventilating and entering buildings (Deyoe 14-15);

- The defendants violated API RP 55 § 12.6 on warning signs (Deyoe 16);

- The defendants violated API RP 55 § 12.4 concerning fixed H2S monitors and warning lights (Deyoe 17);

- The defendants violated API RP 55 § 9.15 on maintenance of fixed monitors (Deyoe 18);

- The defendants violated API RP 55 § 9.4 concerning safe work practices (Deyoe 22).

By the same logic as *Christo*, such evidence should be excluded. That was the holding of *United States v. Pacific Gas & Electric Co*. when the utility was indicted for knowingly violating the Pipeline Safety Act after a fatal explosion in California. There, the government sought to introduce expert testimony of "industry standards of care" for pipeline operators, and the court entered an order before trial excluding such evidence:

> [A]ny expert testimony on 'industry standards of care' would confuse the issues in this criminal prosecution, where the requisite mental state is 'knowing and willful' violation of the minimal federal safety standards set forth by the Pipeline Safety Act. Accordingly, [the government] is prohibited from [offering testimony] in any manner that would invite the jury to substitute another 'standard of care ….

*United States v. Pacific Gas & Electric Co*., 2016 WL 1640462, at *3 (N.D. Cal. April 26, 2016) (attached hereto as Exhibit 1).

3.      **Legal Conclusions/Ultimate Jury Questions**:  Finally, government experts also plan to testify that the defendants violated elements (or all) of the statutes that are charged in the indictment – which are the ultimate questions for the jury, for example:

- Aghorn failed to comply with the requirements of the Clean Air Act's general duty clause charged in count one (Deyoe p 27);

- The OSHA citations that correspond to counts three, four and five are "appropriately applied and supported by the facts" (McElvaney p 2);

- Aghorn violated the OSHA standards underlying Count Four (McElvaney p 6-7).

Government "experts" should not be allowed to testify to legal conclusions that tell the jury how it should find on the elements on the offenses with which defendants are charged.  *See, e.g., Matthews v. Ashland Chemical Inc.*, 770 F.2d 1303, 1311 (5th Cir. 1985); *United States v. Griffin*, 324 F.3d 330, 348 (5th Cir. 2003) (condemning testimony that gives interpretation or opinions on the law); *see also Pacific Gas & Electric* (Ex. 1), 2016 WL 1640462, at *2 (government expert may not "rehash otherwise admissible evidence" from fact witnesses who have the personal knowledge of the events or tell the jury how to interpret those facts, which is the province of the jury).  Such testimony invades the province of the Court and the jury and should be excluded.

*       *       *

For the foregoing reasons, this Court should exclude the types of evidence set forth above.  In the alternative, the Court should enter an *in limine* order requiring the government to approach the bench for a ruling before attempting to introduce such evidence.

Respectfully submitted,


By: /s/Daniel Hurley
    Daniel Hurley, Bar No. 10310200
    HURLEY, GUINN & SINGH
    1805 13th Street
    Lubbock, Texas 79401
    Tel: (806) 771-0700
    Fax: (806) 763-8199
    E-mail: dwh@hurleyguinn.com

    /s/Brian Carney
    Brian Carney
    Attorney at Law
    1202 W. Texas Ave.
    Midland, TX 79701
    (432) 686-8300
    Fax: (432) 686-1949
    Email: Brian@carneylawfirm.net

    /s/Frank Sellers
    Frank Sellers
    Westfall Sellers
    1612 Summit Avenue, Suite 200
    Fort Worth, TX 76102
    817-928-4222
    Fax: 817-385-6715
    Email: frank@westfallsellers.com

    **ATTORNEYS FOR TRENT DAY**

/s/ David Gerger
David Gerger, Texas Bar No. 07816360
dgerger@ghmfirm.com
Matt Hennessy, Texas Bar No. 00787677
mhennessy@ghmfirm.com
GERGER HENNESSY & MARTIN LLP
700 Louisiana, Suite 2300
Houston, Texas 77002
713.224.4400 – Telephone
713.224.5153 – Fax

s/ Marla Thompson Poirot
Marla Thompson Poirot, Tex Bar 00794736
marla@poirotlaw.com
THE POIROT LAW FIRM, PLLC
PO Box 25246
Houston, Texas 77265
713.816.1660 – Telephone

**ATTORNEYS FOR AGHORN
OPERATING INC.**

/s/Darrell Corzine
Darrell Corzine
KELLY MORGAN CORZINE HANSEN, PC
P.O. Box 1311
Odessa, TX 79760
(432) 367-7271
Fax: 432/363-9121
Email: dcorzine@kmdfirm.com

**ATTORNEY FOR KODIAK
ROUSTABOUT INC.**

## **CERTIFICATE OF CONFERENCE**

The government will file a response.

/s/ David Gerger
David Gerger

## **CERTIFICATE OF SERVICE**

This pleading was filed electronically, which sends a copy to all counsel of record.

/s/ David Gerger
David Gerger